```
                 UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

RENEE L.,                         :
   Plaintiff,                     :
                                  :
v.                                : Civil No. 3:21CV872(AWT)
                                  :
KILOLO KIJAKAZI, ACTING           :
COMMISSIONER OF SOCIAL SECURITY,  :
   Defendant.                     :
```

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Renee L. appeals the Commissioner's final decision denying her application for Disability Insurance Benefits pursuant to section 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3).

The plaintiff filed a motion for reversal or remand, contending that the Administrative Law Judge (ALJ) "1) erred in her analysis of multiple source opinions; 2) relied on her own opinion over that of two mental health professionals; 3) made misstatements of the record; and 4) composed an unsupported Residual Functional Capacity (RFC) description lacking multiple critical factors in the absence of reliable opinion evidence."  Pl.'s Mem. (ECF No. 16-1) at 2.

The Commissioner filed a motion for an order affirming the Commissioner's decision, maintaining that "the Acting Commissioner's findings are supported by substantial evidence"

and are "made by a correct application of legal principles." Def.'s Mot. (ECF No. 20) at 1.

For the reasons set forth below, the court concludes that the ALJ applied the correct legal principles and that the ALJ's findings are supported by substantial evidence. Thus, the Commissioner's final decision is being affirmed.

**I.   Legal Standard**

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). Substantial evidence "is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted).

Absent legal error, the court may not set aside the decision of the Commissioner if it is supported by substantial evidence. See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Thus, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

## II. Discussion

### A. Residual Functional Capacity

An individual's residual functional capacity "is the most" that individual "can still do despite" his or her "limitations" (20 C.F.R. § 404.1545(a)(1)) on a "regular and continuing basis" (Social Security Ruling ("SSR") 96-8p). The plaintiff contends that the ALJ "composed an unsupported . . . RFC[] description lacking multiple critical factors in the absence of reliable opinion evidence" (Pl.'s Mem. at 2). To support this contention, the plaintiff points to attendance and task performance evidence in the opinions of Drs. Pamela Fadakar and Ruth Grant (see Pl.'s Mem. at 14-15). However, the ALJ "is responsible for assessing [] residual functional capacity" (20

C.F.R. § 404.1546(c); SSR 96-8p) "based on all of the relevant medical and other evidence" (20 C.F.R. § 404.1545(a)(3)).  As noted in section II.B. below, the ALJ's RFC was supported by more than the medical opinions of Drs. Pamela Fadakar and Ruth Grant.  Also, the ALJ found parts of both opinions persuasive, and incorporated mental and physical impairment limitations from those opinions into the RFC.

> The ALJ wrote:
>
> [T]he claimant has the residual functional capacity to perform **light work** as defined in 20 CFR 404.1567(b) except she can frequently kneel and occasionally climb ramps, stairs, ladders, ropes, and scaffolds, stoop, and crawl; can perform **simple routine tasks involving no more than simple, short instructions and simple work-related decisions** with **few work place changes**; can perform work at **self-pace with[out] strict adherence to time or production requirements**, and **occasional interaction with the public, supervisors, and co-workers**.

R. 21 (emphasis added).

   **B. Medical Opinions**

   The plaintiff contends that the ALJ "erred in her analysis of multiple source opinions" (Pl.'s Mem. at 2):

> Of psychological opinion evidence, the ALJ found the opinion of State Agency reviewer Dr. Pamela Fadakar, Psy.D., to be "partially persuasive." (Tr. 24). She found the opinion of Consultative Examiner Dr. Ruth M. Grant, Ph.D., to be "minimally persuasive." (Tr. 25).

4

Pl.'s Mem. at 8.  The plaintiff contends that "[b]y finding both psychological opinions 'minimally persuasive'[1] and not making any attempts to further develop the psychological opinion evidence of record[2], the ALJ committed legal error by improperly substituting her own judgment."[3]  Pl.'s Mem. at 12.  The plaintiff also contends that "the ALJ's sole basis[4] for disqualifying[5] two expert opinions is rooted in misstatements[6] of the record".  Pl.'s Mem. at 13.

---

[1] The ALJ found Dr. Grant's opinion minimally persuasive but found Dr. Fadakar's opinion *partially* persuasive.

[2] Evidence is considered "complete and detailed enough" when it allows the ALJ "to make a determination or decision about whether" the plaintiff is disabled (20 C.F.R. § 404.1512(a)(2)), as is the case here.

[3] As discussed below, the ALJ's assessments of the opinions of Drs. Fadakar and Grant are supported by substantial medical and other evidence.

[4] The challenged "misstatements" (see footnote 6) relate only to Dr. Grant's opinion, which cites Exhibits 9F, 12F, 14F, and 15F, not to Dr. Fadakar's opinion which cites Exhibits 19F, 21F and 4E.  As discussed below, the challenged misstatements were not the sole bases for finding Dr. Grant's opinion minimally persuasive.

[5] The two challenged opinions were not disqualified.  Some parts of both opinions were found persuasive, and the ALJ incorporated mental impairment limitations into the RFC.

[6] The plaintiff contends that the ALJ's opinion that other evidence of record shows a less severe degree of limitation is erroneous.  She asserts:

> This "other evidence of record" does not actually show a less severe degree of limitation, however:
> 
> - Exhibit 9F, p. 11 correlates to transcript page 1117. That is a surgical note from Ms. L[.]'s January 2018 back surgery, which **predates** her alleged onset of disability date of June 30, 2018, by six months. That surgical records notes "Psych: Normal mood and affect is noted. They follow commands appropriately." (Tr. 1117).
> - Exhibit 12F, p. 28 correlates to transcript page 1351. That is a surgical note from December 6, 2017 which again **predates** Ms. L[.]'s alleged onset of disability. That note also reads "Psych: Normal mood and affect is noted. They follow commands appropriately." (Tr. 1351).
> - Exhibit 14F, p. 28 correlates to transcript page 1420. It is a **duplicate** copy of the December 6, 2017 visit.

5

Section 404.1520c of the regulations addresses how an ALJ considers, and articulates her consideration of, medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017. This claim was filed on March 8, 2019. See R. 170. The regulation states in pertinent part:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

---

- Exhibit 15F, p. 56 correlates to transcript page 1515, and unlike the other notes, is actually from the relevant time period. That note however is a neurology consultation for myasthenia gravis, by Dr. Alice Rusk, who did note that neurologically, Ms. L[.] is "fluent and able to follow three step commands. Repetition and naming intact" (Tr. 1515). **But she also noted Ms. L[.] is positive for anxiety and memory loss (Tr. 1515) and "she will need to start back on disability now." (Tr. 1513).**

Pl.'s Mem. at 8-9 (emphasis added). The regulations do not preclude analysis of evidence that predates the alleged onset date. See 20 C.F.R. § 404.1545(a)(3) (The ALJ "will assess [] residual functional capacity based on all of the relevant medical and other evidence."). Also, the plaintiff points to a few sentences in Exhibit 15F, a 62-page document, but ignores other medical evidence to the contrary. Absent legal error, if the ALJ's decision is supported by substantial evidence, it must be sustained even where there may also be substantial evidence to support the plaintiff's contrary position.

> (b) How we articulate our consideration of medical opinions and prior administrative medical findings. We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:
>
>> (1) Source-level articulation. . . . [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), **we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.**
>>
>> (2) Most important factors. The factors of **supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors** we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. . . . **We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section**, as appropriate . . . .
>>
>> (3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. . . .
>
> (c) Factors. We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:
>
>> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>>
>> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

7

>nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>
>(3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i)-(v) of this section.
>
>>(i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>>(ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>>(iii) Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).
>>(iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).
>>(v) Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.
>
>(4) Specialization. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
>
>(5) Other factors. . . .
>
>(d) Evidence from nonmedical sources.  We are not required to articulate how we considered evidence from nonmedical

> sources using the requirements in paragraphs (a)-(c) in this section.

20 C.F.R. § 404.1520c (effective March 27, 2017) (emphasis added).

> In evaluating an individual's symptoms, . . . The determination or decision must **contain specific reasons** for the weight given to the individual's symptoms, be **consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess** how the adjudicator evaluated the individual's symptoms.

SSR 16-3p (emphasis added).

### 1. Pamela Fadakar, Psy.D.

The ALJ wrote:

> The undersigned finds partially persuasive the mental functional capacity (MRFC) assessment provided by the State agency psychological consultant, Pamela Fadakar, PsyD. (Exhibit 3A). Dr. Fadakar is an expert in social security disability evaluation. She is also familiar with our disability programs and their evidentiary requirements, including formulating MRFC assessments. She did not, however, treat or examine the claimant, and therefore her opinion is less persuasive. Furthermore, though she did examine the incomplete evidence of record submitted at the initial and reconsideration levels, she did not examine more recent evidence submitted at the hearing level. **The undersigned accepts Dr. Fadakar's determination that the claimant is limited to simple work because it is consistent with the claimant's treatment for attention deficit disorder. (Exhibit 19F). On the other hand, the undersigned finds minimally persuasive** Dr. Fadakar's determination **that the claimant would have inconsistent attendance due to physical symptoms**. As discussed earlier in this Finding, **the undersigned finds the claimant overstates her pain**. Her **bursitis resolved quickly** with a prednisone taper and her **myasthenia gravis is well controlled** with medication. (Exhibit 19F and 21F). Further,

9

> the claimant's **pain complaints are not consistent with her self-reported activities of daily living**. (Exhibit 4E).

R. 24-25 (emphasis added).

Here, the ALJ articulated how she considered Dr. Fadakar's opinion. The ALJ accepted Dr. Fadakar's opinion that the plaintiff is limited to simple work because it is consistent with the medical treatment for attention deficit disorder.[7] The ALJ supported this finding with medical evidence: Exhibit 19F. The ALJ also found Dr. Fadakar's opinion that the plaintiff would have inconsistent attendance due to physical symptoms minimally persuasive because it was inconsistent with the medical evidence (medication producing quick resolution of bursitis and well-controlled myasthenia gravis) and

---

[7] The plaintiff challenges this assessment by pointing to two pages of Dr. Fadakar's 15-page opinion:

> State Agency reviewer Dr. Fadakar opined that Ms. L[.] is moderately limited in the ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, complete a normal workday without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting (Tr. 93-94). She noted that Ms. L[.]'s "…attendance maybe inconsistent secondary to physical [symptoms]/limitations." (Tr. 93).

Pl.'s Mem. at 14 (modified to omit plaintiff's last name). However, the plaintiff ignores other evidence, and the RFC is based on all the evidence, not just on the opinions of Drs. Fadakar and Grant. Also, despite not finding the opinions fully persuasive, the ALJ did incorporate mental and physical limitations from these opinions into the RFC.

10

inconsistent with the record (pain complaints that are inconsistent with self-report of activities of daily living).  The ALJ supported this finding with medical evidence: Exhibits 21F and 4E.  The ALJ considered Dr. Fadakar's specialization[8] (expert in social security disability evaluation who is familiar with disability programs and evidentiary requirements, including formulating MRFC assessments), and her relationship with the plaintiff (did not treat or examine the claimant).  The ALJ also noted that Dr. Fadakar based her opinion on an incomplete record (incomplete at initial and reconsideration levels, and missing more recent evidence at hearing level).  It was on this basis that the ALJ found Dr. Fadakar's opinion to be partially persuasive.

>The ALJ also wrote:
>
> The undersigned finds the claimant's allegations partially persuasive. The claimant has a long history of **myasthenia gravis**. (**Exhibit 21F, p. 10**). However, her symptoms are **well controlled** with medications. (**Exhibit 10F, p. 20**). Indeed, the claimant had no significant treatment from 2013 to 2018 because she was "extremely stable" on medication. (**Exhibit 21F, p. 10**).

---

[8] Dr. Fadakar is a psychologist not a physician.  The regulations support the ALJ's finding that her opinions regarding physical limitations are less persuasive than her opinions regarding mental limitations such as attention deficit disorder. See 20 C.F.R. § 404.1520c(c)(4).

The claimant alleges severely limited ability to stand and walk, alleging she can stand for only 15 minutes for a total of 3 hours per day and walk for only 15 minutes due to weakness in her legs. Those allegations are not consistent with the medical evidence.

Specifically, **neurological examinations are largely unremarkable**. On examination in **October, 2018** show the claimant had normal tone and bulk, no drift, full 5/5 strength in the upper and lower extremities, intact sensation, normal reflexes, normal coordination, and normal gait and base. (**Exhibit 21F, p. 9**). She had an acute flare-up of **bursitis** in **July, 2019,** but on examination she was in **no distress, moved readily** from a sitting to standing position, her gait was not antalgic, ataxic, or paretic, and she could stand on her heels and toes without difficulty. (**Exhibit 24F, p. 1**). Similarly, **her primary care physician, Steven Murphy, MD, examined the claimant in November 2019** and **observed the claimant actively moved all extremities without difficulty.** (**Exhibit 19F, p. 3**). Dr. Murphy also observed **full motor strength and intact sensation in the upper and lower extremities** when he examined the claimant in **August 2019.** (**Exhibit 19F, p. 8**). Likewise, **Richard Slutsky, MD, an independent medical examiner, examined the claimant and observed "excellent" motor strength bilaterally, intact sensation, unremarkable gait, and no difficulty rising on and off the examination table.** (**Exhibit 16F, p. 2[-3]**). Moreover, it is **hard to reconcile the claimant's allegations with her reported activities of hiking and walking.** (**Exhibits 19F and 24F**). As the "major difference between sedentary and light work is that most light jobs . . . require a person to be standing or walking most of the workday"; SSR 83-14; the undersigned finds the light occupational base is more appropriate than the sedentary occupational base in this case because the **evidence of record reveals no significant evidence showing the claimant could not stand or walk for most of the workday.**

R. 22-23 (emphasis added).  In a situation where a claimant indicates that pain has limited standing and walking to a few minutes a day, one would expect to see "some signs of muscle wasting".  SSR 16-3p, Evaluation of Symptoms in Disability Claims, at Item "1. Consideration of Objective Medical Evidence" ("[i]f no muscle wasting were present, we might not, depending on the other evidence in the record, find [] "reduced muscle strength on clinical testing" consistent with other evidence").

Here, the plaintiff claims an onset of disability date of June 30, 2018.  On September 11, 2018, Steven Murphy, M.D., wrote that the plaintiff reported that she "has not had any [myasthenia] exacerbations".  R. 1554/19F, p. 21.  On October 16, 2018, treating neurologist, Alice Rusk, M.D., noted that since her last visit in 2013, the plaintiff "had not had any exacerbation".  R. 1595/21F, p. 7.  On June 10, 2020, the plaintiff testified that her myasthenia gravis "has stayed pretty much okay with medication" except for unchallenged eye issues.  R. 43.

Also, the ALJ may consider activities of daily living when assessing complaints of pain. See 20 C.F.R. § 404.1529(c)(3). On May 21, 2019, almost a year after the onset of symptoms, when asked what she did from the time

13

she woke up until going to bed, the plaintiff self-reported: "I get my kids up and off to school, feed the dog, tidy up the house, and care for the home and my family. Cook dinner, do laundry, all normal things." R. 222/4E, p. 2. She reported that she goes outside "every day", drives a car, shops for "groceries, clothing, household items", pays bills, and counts change. R. 224/4E, p. 4. She reports daily "reading, gardening, painting, meditation" as activities she does whether sick or feeling well. R. 225/4E, p. at 5. She reports a "walk or sit and talk" with friends and family "3-4 times a week." R. 225/4E, p. 5). See also R. 1353 and 1613/12F, p. 30 and 24F, p. 1 (on 7/1/19 reported "doing a fair amount of walking and hiking").

The ALJ's citations to the record are accurate. The plaintiff has not shown that the ALJ erred in applying the law, and the ALJ's assessment of this opinion is clearly articulated, reviewable, and supported by substantial evidence. Therefore, the plaintiff's motion to reverse or remand based on the ALJ's analysis of Dr. Fadakar's opinion is being denied.

### 2. Ruth M. Grant, Ph.D.

The ALJ wrote:

> The undersigned finds minimally persuasive the

> consultative examination report of Ruth Grant, PhD. (Exhibit 18F). Dr. Grant examined the claimant one time. Although the undersigned does not doubt that Dr. Grant accurately described her clinical observations, but many of the **abnormal findings** she described – and **which formed the basis of her medical opinion – are generally not seen elsewhere in the record**. Dr. Grant determined the claimant would have moderate difficulty doing simple tasks independently, and significant difficulty maintaining concentration and attention, learning new tasks, maintaining a regular schedule, and performing complex tasks independently. (Exhibit 18F, p. 5). However, **other evidence of record shows less severe degree of limitation. Clinical records show, for instance, the claimant can follow a 3-step command despite her limitations**. (Exhibit 9F, p. 11; Exhibit 12F, p. 28; Exhibit 14F, p. 28; Exhibit 15F, p. 56). Dr. Grant's opinion is also **not consistent with the claimant's self-reported activities of daily living**. (Exhibit 4E).

R. 25 (emphasis added).

Here, the ALJ articulated how she considered Dr. Grant's opinion. The ALJ found Dr. Grant's opinion that the plaintiff would have moderate difficulty doing simple tasks independently, and significant difficulty maintaining concentration and attention, learning new tasks, maintaining a regular schedule, and performing complex tasks independently minimally persuasive because many of the abnormal findings were inconsistent with medical and other evidence (clinical records and self-reported activities of daily living) showing a less severe degree of limitation. The ALJ supported this finding with medical and other

evidence: Exhibits 9F, p. 11 (noting under "Physical Exam", signed by Jeffrey M. Heftler, M.D. on 12/6/17, "follow commands appropriately"); 12F, p. 28 (same); 14F, p. 28 (same); see also 14F, p. 5 (noting under "Neurologic Exam", signed by Alice Rusk, M.D. on 10/15/18, "able to follow three step commands."); 15F, p. 56 (same) and Exhibit 4E (self-reporting almost a year after date of onset taking care of self, family, pets, house, shopping, bills, and gardens, painting, meditating, gathering with family and friends, following written and spoken instructions well, getting along well with authority figures and handling changes in routine well; see also R. 1650/15F p. 2 (desire to teach meditation noted by Leo P. Donovan, Jr., Ph.D. in a letter dated 6/15/20 regarding an initial consultation on 10/16/19 (claimant did not attend scheduled follow-up therapy sessions)). The ALJ also considered Dr. Grant's relationship with the plaintiff (examined the plaintiff once).

The ALJ also wrote:

> . . . Ruth Grant, PhD, an independent consultative examiner, thoroughly examined the claimant and determined the claimant **can understand, remember, and apply simple directions and instructions. (Exhibit 18F, p. 5).** She **has good insight and her overall cognition is intact. (Exhibit 19F, pp. 25, 27).** . . . On examination, she **demonstrated intact attention span and concentration and normal fund of knowledge. (Exhibit 14F, p. 5; Exhibit 15F, p. 56; Exhibit 21F, p. 9).**

16

> **Accordingly, the undersigned finds the claimant can perform simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes, and can perform work at self-pace with on strict adherence to time or production requirements.**
> . . . Dr. Grant's report shows the claimant appears depressed with poor feelings of self-worth. (Exhibit 18F, p. 2). She determined the claimant might have significant difficulty relating adequately to others and dealing with stress. (Exhibit 18F, p. 5).  However, her **medical providers generally describe her as pleasant and cooperative and that she maintains good eye contact. (Exhibit 9F, p. 11; Exhibit 11F, p. 90; Exhibit 12F, p. 28; Exhibit 14F, p. 28; Exhibit 19F, p. 21; Exhibit 19F, p. 25). Accordingly, the undersigned finds the claimant can occasionally interact with the public, supervisors, and co-workers.**

R. 23-24 (emphasis added).

The ALJ's citations to the record are accurate.  The plaintiff has not shown that the ALJ erred in applying the law, and the ALJ's assessment of this opinion is clearly articulated, reviewable, and supported by substantial evidence.  Therefore, the plaintiff's motion to reverse or remand based on the ALJ's analysis of Dr. Grant's opinion is being denied.

### III. Conclusion

For the reasons set forth above, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing (ECF No. 16) is hereby DENIED, and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 20) is hereby GRANTED.

The Clerk shall enter judgment accordingly and close this case.

The Clerk's Office is instructed that, if any party subsequently appeals to this court the decision made after this remand, that Social Security appeal shall be assigned to the undersigned (as the District Judge who issued the ruling that remanded the case).

It is so ordered.

Dated this 29th day of August 2022, at Hartford, Connecticut.

                                      /s/AWT
                              Alvin W. Thompson
                    United States District Judge